**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO.: <u>18-cv-62034</u>

| | |
|---|---|
| **RAMÓN LUIS AYALA-RODRÍGUEZ** p/k/a **"DADDY YANKEE"; MIREDDYS GONZÁLEZ; THE CONJUGAL PARTNERSHIP AYALA-GONZÁLEZ; AND EL CARTEL RECORDS INC.** | **TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, INJUNCTIVE RELIEF, UNFAIR COMPETITION, STATUTORY DAMAGES, DECLARATORY JUDGMENT, AND, IN THE ALTERNATIVE, BREACH OF CONTRACT.** |
| Plaintiffs | |
| v. | |
| **FALIC FASHION GROUP, LLC; JOHN DOE AND JANE DOE; COMPANIES ABC and EDF; INSURERS HIJ, KLM AND OPQ.** | **PLAINTIFFS DEMAND TRIAL BY JURY** |
| Defendants | |

## <u>VERIFIED COMPLAINT</u>

**COME NOW**, Plaintiffs, **EL CARTEL RECORDS INC.**, a Puerto Rico Profit Corporation, **RAMÓN LUIS AYALA-RODRÍGUEZ** p/k/a **"DADDY YANKEE"**, an individual, **MIREDDYS GONZÁLEZ**, an individual, and the **CONJUGAL PARTNERSHIP AYALA-GONZÁLEZ** formed by both of them, (collectively referred herein as "Plaintiffs"), and bring this Complaint against **FALIC FASHION GROUP, LLC**, a Florida Profit Corporation, **JOHN DOE** and **JANE DOE**, individuals whose name is unknown at the time of this filing, **COMPANIES ABC and EDF**, Profit Corporations with unknown name at the time of this filing, and **INSURERS HIJ**, **KLM** and **OPQ**, insurance companies with

unknown name at the time of this filing, (collectively referred hereinafter as "Defendants"), (all parties to this action collectively referred to as the "Parties"), and allege as follows:

## I.  JURISDICTION AND PROPER VENUE

1. This action arises under the Trademark Act of 1946, the Lanham Act, (15 U.S.C.A. §§ 1051 et seq.), and particularly under §§ 32, 34, 35 and 43(a) of the Act (15 U.S.C.A. §§ 1114, 1116, 1117 and 1125a), as more fully appears in this complaint. This United States District Court for the District of Southern Florida has jurisdiction under § 39 of the Lanham Act (15 U.S.C.A. § 1121).

2. Likewise, this is a civil action arising under the United States Trademark Act, 15 U.S.C. §§1051-127, henceforth the "Lanham Act", where original jurisdiction is expressly conferred under 15 U.S.C. §1121 and 28 U.S.C. §1338 (a).

3. The Court has pendant jurisdiction over all other related claims herein in accordance with 28 U.S.C. §1338 (b).

4. Declaratory Judgment is sought under the Declaratory Judgment Act, 28 U.S. Code § 2201 (a).

5. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400 because Defendants conduct business in Southern Florida and interstate commerce, and the claims alleged in the Verified Complaint arose in this judicial district.

6. Plaintiffs seek damages, statutory damages and permanent injunctive relief pursuant to §§ 32, 33, 34, 35, 36, 43 (a) and 43 (c) of the Lanham Act, 15 U.S.C. §§ 1114, 1115, 1116, 1117, 1118, 1125 (a) and 1125 (c), and the Common Law.

7. By this action, Plaintiffs seek statutory damages and permanent injunctive relief pursuant to §1116 of the Lanham Act.

8. The matter in controversy in this case exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States, which confers this Honorable Court diversity jurisdiction under 28 U.S. Code § 1332.

## II. THE PARTIES

9. **EL CARTEL RECORDS, INC.** is a corporation established under the laws of the Commonwealth of Puerto Rico, with the right to sue and be sued, which has a principal place of business located at 601 Calle del Parque, Suite 305, San Juan PR, 00909.

10. **RAMÓN LUIS AYALA-RODRÍGUEZ** is known professionally as **DADDY YANKEE**.  For the past two decades Daddy Yankee has enjoyed the outmost respect in the music and entertainment industry as a brilliant and groundbreaking artist, producer, musician, trendsetter and entrepreneur. For the purposes of this lawsuit his postal address is 403 Calle del Parque, 8th, San Juan PR 00912.

11. **MIREDDYS GONZÁLEZ** is the spouse of plaintiff Ramón Luis Ayala and also the principal corporate officer of the entity El Cartel Records Inc. Accordingly she has verified the present complaint. See **Exhibit 1**. For the purposes of this lawsuit his postal address is 403 Calle del Parque, 8th, San Juan PR 00912.

12. **MR. AYALA-RODRÍGUEZ** and **MS. GONZÁLEZ** form a conjugal partnership under the laws of the Commonwealth of Puerto Rico.

13. Upon information and belief, Defendant **FALIC FASHION GROUP, LLC** is a duly organized company, with the capacity to sue and be sued. Its principal place of business is 6100 Hollywood Boulevard, Suite 410, Hollywood, FL 33024.

14. **JOHN DOE and JANE DOE** are individuals with identities and addresses

unknown to Plaintiffs, who engaged in and contributed to the acts of infringement and/or caused the grievances described in this verified complaint.

15.  **COMPANIES ABC and EDF** are incorporated entities with names and addresses unknown to Plaintiffs, which engaged in and contributed to the acts of infringement described in this verified complaint.

16.  **INSURERS HIJ, KLM**, and **OPQ** are insurance companies that issued policies in favor of any of the properly named and unknown Defendants, and that would cover any liability incurred by Defendants as a direct or indirect result of the claims alleged herein.

### III. NATURE OF ACTION

17. This action arises out of Defendants' false, deceptive and misleading marketing, distribution, offering for sale and sale of products in a manner that infringes upon the rights Plaintiffs have in relation to his famous **Daddy Yankee** and **DY** trademarks, and competes unfairly in the marketplace with Plaintiffs' product, thereby inflicting substantial injury to them.

18. Defendants' unauthorized use of a Trademark that is a literal imitation of the trademarks long used by the Plaintiffs in connection with the distribution, marketing and sale of Daddy Yankee brand products, is done in a manner to imply, deceptively and confusingly, that the products which Defendants' market, distribute and offer for sale are in some way associated with, licensed by or otherwise authorized or sponsored by Plaintiffs.

19. Defendants are also in violation of Florida's Right of Publicity Law, as they have taken advantage of Plaintiff Ramón Luis Ayala's artistic name, image and likeness to unlawfully commercialize their products.

20. Finally, Defendants have failed to account and make payment for sales.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

21. Plaintiff Ramón Luis Ayala first began to use the name and mark **Daddy Yankee** as early as the year 1991 and has continued and expanded upon that use up to the present time.

22. As his career progressed, Mr. Ayala also began to use the abbreviated trademark **DY** in connection with all matters related to his career.

23. Since long prior to the acts complained of herein, members of the music and recording industry, as well as consumers throughout the world, have recognized the name and mark **Daddy Yankee** as a trade name exclusively identifying Plaintiff Ramón Luis Ayala and as a service mark and trademark designating services or products of the highest quality originating exclusively from Plaintiffs.

24. **Daddy Yankee** has been recognized worldwide since its inception as one of the pioneer artists in the Latin urban music scene of the last two decades.

25. **Daddy Yankee** is registered under International Class or "IC" 41 for: Entertainment services, namely, live performances by a hip-hop and reggaetón music artist, entertainer, composer and actor not relating to sports or a sport team, league, mascot or stadium.

26. The registration number for **Daddy Yankee** in IC 41 is 4603567, issued on

September 16, 2014.

27. The aforementioned trademark registration establishes that the mark's first use in commerce was on the year 1992.

28. Pursuant to its official federal trademark certificate, **Daddy Yankee** is registered under International Class or "IC" 9 for: Prerecorded phonograph records, CDs, audio tapes, video tapes, DVDs and laser discs featuring music, comedy or drama; all of the foregoing featuring the music of the entertainer and musical artist known as "Daddy Yankee" and not relating to sports or a sport team, league, mascot or stadium.

29. The registration number for **Daddy Yankee** in IC 9 is 4603600, issued on September 16, 2014.

30. The aforementioned trademark registration in IC 9 establishes that the mark's first use in commerce was on the year 1997.

31. Pursuant to its official federal trademark certificate, **Daddy Yankee** is registered under International Class or "IC" 25 for: Clothing, namely, t-shirts, billed caps, sweat shirts and footwear; all of the foregoing relating to the entertainer and musical artist known as "Daddy Yankee" and not relating to sports or a sport team, league, mascot or stadium.

32. The registration number for **Daddy Yankee** in IC 25 is 4603601, issued on September 16, 2014.

33. The aforementioned trademark registration in IC 25 establishes that the mark's first use in commerce was on the year 2004.

34. Pursuant to its official federal trademark certificate, the mark **DY** is registered

under International Class or "IC" 41 for: Entertainment services, namely, live performances by a hip-hop and reggeatón music artist, entertainer, composer and actor.

35. The registration number for **DY** in IC 41 is 4626585, issued on October 28, 2014.

36. The aforementioned trademark registration in IC 25 establishes that the mark's first use in commerce was on the year 2004.

37. Plaintiffs' trademark registrations are valid and subsisting and remain in full force and effect as evidence of the validity thereof and Plaintiffs' exclusive right to own and use the marks in connection with the goods and services specified in the registration and others that may fall within the natural expansion of Plaintiffs' natural course of business.

38. Initially, Plaintiffs had created the business entity DY Merchandising Unlimited LLC, a Puerto Rico For Profit corporation, for the purposes of working on the development, merchandising, promotion and licensing of the **Daddy Yankee** and **DY** trademarks.

39. Eventually Plaintiffs discontinued use of this corporation and effectively transferred all the rights to commercialize the trademarks to the entity **El Cartel Records Inc.,** which is the cornerstone of their entrepreneurial set up.

40. The **Daddy Yankee** and **DY** trademarks are used throughout the world and are further associated with plaintiff and all of the products and services manufactured and offered for sale by **El Cartel Records Inc.**

41. It is estimated that sales under the **Daddy Yankee** and **DY** brands have sales in excess of several million dollars annually.

42. The **Daddy Yankee** and **DY** trademarks enjoy worldwide recognition, having won numerous music industry awards and garnered a great amount of media coverage during the last decade and a half.

43. Among the accolades received by Daddy Yankee are numerous recognitions by the Billboard Music Awards, the Latin Grammys, Soundscan, Youtube, Spotify and all other companies devoted to the distribution of sound recordings and or music videos, and numerous commercial endorsement and public acclaim.

44. As a result of the facts described herein the Daddy Yankee and DY trademarks are to be construed as "famous marks".

45. **Falic Fashion Group, LLC** is a corporation that is in the business of manufacturing and selling designer fragrances, among other products.

46. Mr. Jerome Falic is the CEO of **Falic Fashion Group, LLC.**

47. On or about 2007, Mr. Jerome Falic approached Plaintiffs with the idea of manufacturing a fragrance using the image and likeness of the **Daddy Yankee** and **DY** brands.

48. The products to be created were to be sold at the retail locations located in many points of sale and retail stores in the United States and the rest of the Americas.

49. Defendants were to manufacture, market, promote and distribute the fragrances, as part of the licensing agreement, and had a duty to report sales and make royalty payments based upon sales.

50. The aforementioned fragrances came to be known as **Daddy Yankee** and **Dyamante** and used the brand **DY** and **Daddy Yankee** extensively as part of their marketing and advertising platforms.

51. As a result of such campaign, Defendants distributed and undisclosed amount promotional materials that has resulted in an extensive online presence for the products and offerings all over the world wide web on websites as recognized as Amazon, Ebay, Walmart.com, FZ Merchandise LLC at Wallmart Marketplace, and Palatial Products, among many others.

52. As a result of such campaign, Defendants distributed and undisclosed amount promotional materials that has resulted in an extensive presence in traditional retailers such as Marshalls, Macy's, Duty Free of Americas, JC Penny, among many others.

53. Defendants made several million dollars in sales all over the United States.

54. Upon information and belief, Defendants made several million dollars in sales internationally.

55. On October 4, 2011, Mr. Jerome Falic informed Plaintiffs that his company meant to discontinue the manufacturing and sales of the DY and Daddy Yankee products by means of a letter attached herein as **Exhibit 2**.

56. Mr. Falic expressly stated in the letter that defendants had "decided to terminate the License Agreement effective February 29, 2012 in accordance with the provisions of Paragraph 6 of the License Agreement."

57. To this day, and despite their own assertions regarding the termination of the licensing agreement, Defendants continue to make sales of the product all over the United States.

58. It is estimated that such sales are in excess of several million dollars.

59. Despite several request over the years, Defendants have never put their

manufacturing and sales records at the disposition of Plaintiffs for the purposes of an audit, despite clauses in the Licensing Agreement that allowed for such audit.

60. Upon information and belief, Defendants continue to make international sales of the products in controversy.

## V.  DEFENDANTS' WRONGFUL ACTIVITIES



**Figure 1: Example of product with the
infringing and counterfeit trademark**

61. On or around the months of summer of the year 2017, Plaintiffs learned that Defendants **Falic Fashion Group, LLC** were still selling the Daddy Yankee and Dyamante product.

62. Such offering for sale of the Daddy Yankee and Dyamante products were done in the absence of any valid licensing agreement.

63. Defendants have failed to account for such sales.

64. Defendants have failed to pay royalties due for sales prior to the year 2012.

65. Defendants made sales far beyond any applicable "sell-off" period that they may be entitled to under the License Agreement, if any such period does exists which

is hereby affirmatively denied.

66. Shortly after learning of the infringement, on December 10, 2017, the undersigned

Attorney sent Defendants a formal calim and requested an accounting of sales.



**Figure 2: Example of product with the
infringing and counterfeit trademark**

67. In response to such correspondence, Defendants **Falic Fashion Group, LLC**
have expressly admitted that, at the very least, they have made sales of the
product on the years 2015 through 2017, as per accounting statements provided
through communication with the undersigned counsel.

68. Defendants continued to use their infringing and counterfeit mark despite such
demonstrable notice and request for a cease and desist.

69. Defendants offered in interstate commerce services bearing the infringing and
counterfeit mark on goods and services within the natural zone of expansion of
Goods and Services sold under the **Daddy Yankee** and **DY** Trademarks.

70. Defendants offered such goods and services, or the "Infringing Goods and
Services" without the approval of Plaintiffs and long after **Daddy Yankee** and **DY**

had become famous marks.

71. Defendants are using a "counterfeit mark" within meaning of the Lanham Act, as there is actual proof that the goods and services provided by them will be confused with goods and services that originate with Plaintiffs. Lanham Trade-Mark Act, § 34(d)(1)(B)(i), as amended, 15 U.S.C.A. § 1116(d)(1)(B)(i).

72. The Infringing Goods and Services bearing the infringing and counterfeit mark are directed and targeted toward the same group of ultimate consumers through the same channels of trade.

73. In particular, products bearing the Trademarks **Daddy Yankee** and **DY** trademarks are available or would be available at physical retailers and the internet, offered for sale and/or sold by Defendants bearing the infringing and counterfeit trademarks.

74. The acts of Defendants in distributing, offering for sale and/or selling in interstate commerce the Infringing Goods and Services under the infringing and counterfeit marks:

   a. are likely to cause confusion and mistake among the consuming public that all such goods and services originate with **Daddy Yankee** and **DY**;

   b. are likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association of Defendants with the **Daddy Yankee** and **DY** trademarks;

   c. are likely to cause confusion and mistake among the consuming public that Defendants' Goods and Services are being offered to the consuming public with the sponsorship or approval of Plaintiffs; and/or

d. are likely to, and actually dilute, tarnish and blur the distinctive quality of the **Daddy Yankee** and **DY** trademarks, and thus are diminishing and will destroy the public association of the **Daddy Yankee** and **DY** trademarks with Plaintiffs' musical and business enterprise.



Figure 3: **Example of product with the infringing and counterfeit trademark**

75. The aforementioned acts of Defendants are willful and intentional, in that Defendants knew that their use of the infringing and counterfeit marks are identical and/or confusingly similar to the **Daddy Yankee** and **DY** trademarks, willfully ignored such fact, and have done so in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of Defendants' products, and to gain the benefit of the enormous goodwill associated with the Daddy Yankee trademark.

76. Any association of the Defendants and their products with Plaintiffs will harm the reputation of Plaintiffs' Trademark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

77. As a result of Defendants' actions, the value of the Daddy Yankee Trademarks has

been and/or will be diminished, and the goodwill inherent in the **Daddy Yankee** and **DY** Trademarks has suffered and will continue to suffer irreparable injury.

78. As a result of Defendants' actions, Plaintiffs are suffering substantial and irreparable harm to the goodwill and business represented by the **Daddy Yankee** and **DY** trademarks.

79. Defendants' actions have diluted and will continue to dilute the distinctive quality of the **Daddy Yankee** and DY Trademarks and as such caused and are continuing to cause irreparable damage to Plaintiffs.

80. Defendants' actions have tarnished and will continue to tarnish the distinctive quality of the **Daddy Yankee** and **DY** Trademark and cause irreparable damage to Plaintiffs.

81. The actions of Defendants can best be described as a weed growing in place of the **Daddy Yankee** and **DY** Trademarks thus causing irreparable damage to Plaintiffs.

82. Defendants have profited and will unfairly profit from and ride on the enormous time, effort and money invested by Plaintiffs to develop and enhance the **Daddy Yankee** and **DY** Trademarks and the hard-earned reputation and goodwill associated therewith.

83. The aforesaid acts of the Defendants have been intentional, willful and in executed in bad faith.

84. As recently as this present month of August 2018, Plaintiffs have uncovered evidence of the infringing and counterfeit products being sold in dozens if not hundreds of different physical and online retailers.

85. Defendants know that **Daddy Yankee** and **DY** are registered trademarks that belong to Plaintiffs, and that they have no authority whatsoever to use the mark in commerce without Plaintiffs' approval and consent.

86. Defendants are making use of Ramón Luis Ayala's image to promote their brand on internet and to derive publicity.



Figure 4: **Example of advertisement available on the internet unlawfully using Plaintiffs' image for the sake of publicity**

87. Defendants derive substantial profit from numerous online postings and offering the infringing products yet remain with their arms crossed and make no motions whatsoever to improve the situation.

88. Defendants are engaging in willful infringement.

89. Defendants are engaging in temerity and fostering unnecessary litigation.

## VI. FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS

*Trademark Infringement under the Lanham Act*

90. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding

-- 15 --

paragraphs as if fully set forth herein.

91. With full knowledge and awareness of the Plaintiffs' ownership and prior use of the strong, famous **Daddy Yankee** and **DY** Trademarks, Defendants have willfully used, are using, and will continue to use the Infringing Goods and Services in a manner that is likely to cause confusion, or to cause mistake or deceive.

92. Defendants' acts constitute infringement, use of a confusingly similar mark, and use of a spurious mark which is identical to the Daddy Yankee and DY Trademark in violation of 15 U.S.C. §1114.

93. Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and also threatens to perpetually confuse the public as to the origin of the goods and services offered under the trademark.

## VII. SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS

*Trademark Dilution under the Lanham Act*

94. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

95. The aforementioned acts of Defendants constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

96. Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and also threatens to perpetually confuse the public as to the origin of the goods and services offered under the trademark.

## VIII. THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS

*False Designation of Origin under the Lanham Act*

97. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98. The aforementioned acts of Defendants constitute the use of a false designation of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a).

99. Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and also threatens to perpetually confuse the public as to the origin of the goods and services offered under the trademark.

## IX. FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS

*Statutory damages under the Lanham Act for use of counterfeit mark*

100. Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

101. The aforementioned acts of Defendants constitute willful trademark infringement by means of a counterfeit mark, in violation of §1117 (c) and Lanham Act and warrant a request for relief in the form of statutory damages that should be trebled under the statute.

## XV. FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS

*Injunctive relief under the Lanham Act*

102. Plaintiffs repeat and re-allege each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

103.     The aforementioned acts by Defendants constitute violations pursuant to which Plaintiffs is entitled preliminary and permanent injunctive relief including, but not limited to impoundment and destruction of infringing articles as well as money damages, under § 1116 of the Lanham Act.

## XVI. SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS

*Violations of the Florida Right of Publicity Law*

104.     Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

105.     Defendants published, printed, displayed or otherwise publicly used for purposes of trade and commercial or advertising purpose the name, portrait, photograph, or other likeness of the artist Daddy Yankee without express written or oral consent.

106.     Defendant's acts are in violation of Florida's Right of Publicity Law, Fla. Stat. Ann. § 540.08 and give cause for liability as detailed herein, and compensation as detailed below.

## XVII. SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS

*Declaratory Judgment*

107.     Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

108.     Defendants request under the Declaratory Judgment Act, 28 U.S. Code § 2201 (a) that this Honorable Court's jurisdiction declare that any valid licensing

and/or manufacturing agreement that Plaintiffs may have subscribed with Defendants expired on 2012, that said contract did not confer Defendants a right to a "sell-off" period and Defendants' must be subject to an audit.

109.     Defendants request that this Honorable Court's jurisdiction declare that Defendants cannot continue to manufacture, market, promote, distribute or sell products bearing the **Daddy Yankee** and **DY** Trademarks.

## XVIII. EIGTH CLAIM FOR RELIEF AGAINST DEFENDANTS

*In the alternative, Breach of Contract*

110.     Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

111.     Should this Honorable Court find that the Defendants can effectively invoke the clauses of a licensing agreement against the trademark infringement claim detailed herein, Plaintiffs allege in the alternative that Defendants are in breach of contract as a result of failing to make payments for royalties due.

112.     Defendants are in breach of contract as a result of failing to honor the agreement as it pertains to accounting matters.

113.     Defendants are in breach of contract as a result of failing to honor the agreement for failing to observe the dispositions and timeframes of any "sell-off" dates that may be applicable, if any such period actually exists.

114.     The aforementioned acts of Defendants constitute a breach of contract and warrant a request for relief for an amount to be determined at trial.

## XVIII. JURY DEMAND

115.     Pursuant to the Seventh Amendment of the United States Constitution,

Plaintiffs demand a trial by jury in the instant case for their federal question and diversity jurisdiction claims.

## XIX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment as follows:

A. Permanently enjoining and restraining Defendants, their subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assignees, and all those in active concert or participation with them, from:

1. Imitating, copying or making unauthorized use of the Famous **Daddy Yankee** and **DY** Trademarks;

2. Using the Infringing and Counterfeit marks or any mark that sounds like or dilutes the distinctive quality of the **Daddy Yankee** and **DY** Trademarks;

3. Manufacturing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service bearing any unauthorized reproduction, copy or colorable imitation of the **Daddy Yankee** and **DY** Trademarks;

4. Using any unauthorized colorable imitation of the **Daddy Yankee** and **DY** Trademarks in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product or service in such manner as to relate or connect, or tend to relate or connect, such product in any way with Plaintiffs or to any goods sold, sponsored, approved by, or connected with Plaintiffs;

5. Using any unauthorized colorable imitation of the **Daddy Yankee** and **DY** Trademarks in connection with the manufacture, promotion, advertisement,

display, sale, offering for sale, production, import, export, circulation or distribution of any product or service which dilutes or is likely to dilute the distinctive quality of the **Daddy Yankee** and **DY** Trademarks;

6. Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of Plaintiffs' Trademarks or Plaintiffs' rights in the **Daddy Yankee** and **DY** Trademarks, or to their right to use or exploit such trademark, or constituting dilution of the **Daddy Yankee** and **DY** Trademarks and the reputation and the goodwill associated thereto;

7. Making any statement or representation whatsoever, with respect to the infringing goods and services in issue, that falsely designates the origin of the goods and services as those of the Plaintiffs, or that is false or misleading with respect to Plaintiffs;

B. Directing that Defendants deliver for destruction all products, labels, tags, artwork, prints, signs, packages, dies, wrappers, receptacles and advertisements in its possession, custody or control bearing resemblance to the **Daddy Yankee** and **DY** Trademarks and/or any reproductions, copies or colorable imitations thereof.

C. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product at issue in this case that has been offered for sale, sold or otherwise circulated or promoted by Defendants is authorized by Plaintiffs or is related to or associated in any way with Plaintiffs' Goods and Services.

D. Declaring that the award for willful infringement should be trebled due to Defendants' use of a counterfeit mark and as per § 1117 (b) of the Lanham Act.

E.  Conferring Plaintiffs an award for the amount of no less than **thirteen million dollars ($13,000,000**) for statutory damages due to Defendants' acts of willful trademark infringement and statutory damages as trebled under the Lanham Act for use of a counterfeit trademark.

F.  Awarding Plaintiff costs, reasonable attorneys and investigatory fees and expenses, together with prejudgment interest, under the provisions of § 1117 of the Lanham Act.

G.  Conferring Plaintiffs an award for the amount of no less than **two million dollars ($2,000,000**) for damages due to Defendants' acts in violation of Florida's Right of Publicity Law.

H.  Declaring there is no enforceable licensing agreement between the parties, Defendants never had a right to a sell-off date and Plaintiffs are owed a full accounting of sales and manufacturing under the License Agreement.

I.  In the alternative, awarding Plaintiffs an amount of money to be determined at trial to compensate for the damages that resulted from Defendants breach of contract.

**RESPECTFULLY SUBMITTED**, on this 28th day of August 2018.

**PRADO NUÑEZ & ASOCCIATES, PSC**
518 Peachtree Rd. Orlando, FL, 32804
Telephone: 407-420-7926/787-977-1411
E-Mail: Pradolaw10@gmail.com


By:   **/s Edwin Prado, Esq.**
      **Florida Bar No. 1008115**


**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/RCF system.